UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jacqueline Mars,                                      Case No. 3:21-cv-1807

             Plaintiff,

     v.                                              MEMORANDUM OPINION
                                                          AND ORDER

Dana, Inc.,

             Defendant.

## I. INTRODUCTION

On August 26, 2021, Plaintiff Jacqueline Mars filed suit against her former employer, Defendant Dana, Inc., in the Lucas County, Ohio Court of Common Pleas, alleging discrimination and retaliation claims under federal and state law. (Doc. No. 1-2). Dana timely removed the case to this court, (Doc. No. 1), and now moves for summary judgment on all of Mars's claims. (Doc. No. 14). Mars did not file a brief in opposition to Dana's motion and the deadline to do so has passed. (*See* non-document order dated July 18, 2022). For the reasons stated below, I grant Dana's motion.

## II. BACKGROUND

In July 2018, Mars, a began working for Dana as a Machine Attendant on the assembly line in Dana's Toledo, Ohio plant. A few months later, on February 1, 2019, Mars reported that one of her coworkers made a joke about Black History Month that Mars found offensive. (Doc. No. 14-4 at 6). The coworker apologized after being instructed to do so by Dana's Human Resources

Department. Additionally, the coworker was informed that future instances of similar comments would result in progressive discipline, up to and including termination. (*Id.*).

A few months later, in April 2019, Dana began ramping up enforcement of a plant policy requiring all employees with longer than shoulder-length hair to either put their hair up or tuck it into their clothing. Mars reported that Matt O'Neill, then the Toledo plant manager, was requiring African American employees to put their hair up while allowing white employees to keep their hair down. Megan Parsons, who currently is the Human Resources Manager for Dana and who previously was the Human Resources Manager for the Toledo plant, investigated Mars' assertion but did not find any evidence that O'Neill was enforcing the hair policy in a discriminatory manner. (Doc. No. 14-4 at 2; Doc. No. 15-5 at 9-10). Dana reiterated to its supervisors that the policy applied to all individuals in the production area and there were no further complaints.[1] (Doc. No. 14-4 at 2).

Separately, in May 2019, Mars applied for intermittent leave pursuant to the Family and Medical Leave Act ("FMLA"). Mars suffered from pain, numbness, and tingling in her wrist, neck, and hip due to carpal tunnel syndrome and a shoulder injury. (Doc. No. 15-1 at 21-22). Mars' application was approved by Dana's third-party administrator, Unum. (Doc. No. 14-4 at 4). Mars' job duties often aggravated her conditions, and she took intermittent FMLA leave to attend therapy sessions, in addition to times when she felt unable to perform her work because of the pain and numbness. (Doc. No. 15-1 at 29-31). Mars also sought to transfer to a different line where she thought the job functions would be less likely to aggravate her conditions. (*Id.* at 31-35). She occasionally was permitted to work on another line. (*Id.* at 31).

---

[1] O'Neill was terminated for an unrelated reason shortly after Mars filed a grievance about O'Neill's application of the hair policy. (Doc. No. 14-4 at 2; Doc. No. 15-1 at 74-75).

2

In January 2020, Mars filed a complaint with the Ohio Civil Rights Commission ("OCRC"), alleging her supervisor, Cherise Whitlock, was harassing employees who took FMLA leave and treating them unfairly. (Doc. No. 15-3). Mars asserts Whitlock would roll her eyes, sigh, and attempt to ignore employees who informed her they wanted to take FMLA leave and also that Whitlock had been in "several loud verbal arguments" with Mars and others about their use of FMLA leave. (*Id.* at 1). Mars also filed a complaint through Dana's ethics hotline. (Doc. No.

Chrissy Swartz, a human resources generalist with Dana, investigated Mars' complaints. (Doc. No. 14-5). Whitlock reported that she and Mars had disagreements about whether employees should be sent home when the assembly line was overstaffed, and that Whitlock told Mars she could not let people go home early or take the day off because she needed to anticipate employees taking intermittent FMLA leave. (*Id.* at 2-3). Whitlock reported "[m]any employees on her line take intermittent FMLA [leave]." (*Id.* at 2). Swartz concluded Whitlock had not been discriminating or retaliating against employees who took FMLA leave or interfering with their ability to take that leave. (*Id.* at 3). While Swartz was unable to substantiate Mars' allegations of a hostile work environment, she "counseled Ms. Whitlock about appropriate ways to convey her staffing discussions with employees when she is frustrated." (*Id.* at 4).

A few months later, the Covid-19 pandemic began. Dana implemented certain protocols in response, including "fogging the line," which involved spraying disinfectant on an assembly line any time an employee on that line displayed symptoms of Covid-19. (Doc. No. 15-5 at 8). On July 31, 2020, Mars was at work when an employee working on another line became ill. The sick employee was in the bathroom, coughing and vomiting, while a worker on Mars' line also was in the bathroom. (Doc. No. 15-1 at 92). Dana fogged the line where the sick employee had been working but did not fog any other lines. (Doc. No. 15-5 at 8).

3

Mars asserts that when she asked the safety manager why her line was not fogged too, he called her ignorant and refused her request to fog her line. (Doc. No. 15-1 at 92-94). Mars spoke with her union representative about the situation before going to Human Resources. (*Id.* at 96-97). After her requests to have her line fogged were unsuccessful, Mars and five other employees left work for the day. Each of the six were terminated for leaving work on July 31, 2020, without permission and without completing required leave forms. (Doc. No. 14-4 at 3; Doc. No. 15-5 at 8).

The union subsequently filed grievances on behalf of all of the terminated employees. (Doc. No. 14-4 a t3-4). While Dana asserted the terminations were appropriate, it offered to resolve the grievances by permitting the terminated employees to return to work. (*Id.*). Mars had obtained new employment following her termination and declined the offer to return to work in November 2020. (Doc. No. 15-1 at 114-16).

Around this same time, Mars filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting she had been discriminated against on the basis of her race and disability. (Doc. No. 14-3). She subsequently filed suit, asserting claims for race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; disability discrimination in violation of the Americans with Disabilities Act ("ADA"); failure to accommodate her disability; retaliation in violation of Title VII; retaliation for use of FMLA leave; and wrongful termination in violation of Ohio public policy. (Doc. No. 1-2).

### III.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is

4

genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV.    ANALYSIS

####    A.    RACE-BASED DISCRIMINATION AND RETALIATION

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may show an employer's discriminatory treatment of the plaintiff through direct evidence or through an inference "based on a prima facie showing of discrimination." *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995) (citing *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335-36 n.15 (1977)).

Before bringing a Title VII race discrimination claim in federal court, plaintiffs must file a charge of discrimination with the EEOC within 300 days of the date on which the discriminatory act occurred. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). As Dana notes, the two incidents of alleged racial discrimination Mars identified occurred in February and April 2019. (Doc. No. 14-3). Mars testified during her deposition that she did not recall any other race-based comments or incidents. (Doc. No. 15-1 at 67 and 89). Mars did not file her EEOC charge until November 11, 2020, well beyond the 300-day filing deadline. (Doc. No. 14-3 at 1). Moreover, she did not include a retaliation claim in her EEOC charge. (*Id.*). Therefore, her race-based discrimination and retaliation claims are barred by the statute of limitations. 42 U.S.C. § 2000e-5(e)(1); *Amini*, 259 F.3d at 498.

### B.     DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

Mars asserts claims for discrimination based upon her disability as well as failure to accommodate her disability. Dana first argues Mars cannot establish the elements of a prima facie disability discrimination claim or show that Dana's nondiscriminatory reason for terminating her was pretextual. Dana also argues it is entitled to summary judgment on Mars' failure-to-accommodate claim because Mars did not exhaust her administrative remedies.

The ADA prohibits employers from discriminating against employees because of the employee's disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a prima facie case of disability discrimination, a plaintiff must show: "(1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class." *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 522 (6th Cir. 2021).

If the plaintiff establishes a prima facie case, the employer must provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (citation omitted). If the employer meets this burden of production, "the burden shifts back to the plaintiff to establish that the proffered reason was merely pretext for unlawful discrimination." *Id.*

Dana contends Mars cannot establish a prima facie case because there is no evidence that Dana was aware of Mars' disability or regarded her as disabled. (Doc. No. 14-1 at 28). Dana further contends that, even if Mars could establish a prima facie case, she cannot prevail on her claim because there is no evidence to rebut its non-discriminatory reason for terminating her. (*Id.* at 28-29).

6

Even if I assume Mars could establish a prima facie case of discrimination, I conclude she has not shown Dana's proffered non-discriminatory reason – that she left work without permission – was a pretext for discrimination. Dana's policy required employees who intended to use FMLA leave to inform their supervisors and submit certain paperwork before leaving work. (Doc. No. 15-5 at 26).

Mars conceded she did not tell Whitlock, her supervisor, that she was going to use FMLA leave or fill out an FMLA form before she left the plant at 11:15 a.m., the same time as five other coworkers, immediately after the dispute about fogging the assembly line. (Doc. No. 15-1 at 107-13). She also conceded she knew the other five employees intended to walk out of work at 11:15 a.m.[2] (*Id.*). No reasonable jury could return a verdict in Mars' favor on these facts. *Anderson*, 477 U.S. at 248. Therefore, I grant Dana's motion for summary judgment as to Mars' disability discrimination claim.

I also grant Dana's motion as to Mars' failure-to-accommodate claim. "An employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC because he or she has not exhausted his or her remedies." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Mars did not include any reference in her EEOC charge to an alleged failure to accommodate her disability. (Doc. No. 14-3). Therefore, I conclude this claim is barred by the statute of limitations and enter summary judgment in Dana's favor. *Parry*, 236 F.3d at 309. *See also Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351-52 (6th Cir. 2002) ("Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a[n] . . . ADA action.") (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

---

[2] A contemporaneous recording Mars made on July 30, 2020, rebutted her initial testimony that she did not know exactly what time the other employees were leaving. (Doc. No. 15-1 at 108).

7

C.   FMLA RETALIATION

The FMLA prohibits employers from retaliating against an employee because that employee exercised her rights under the FMLA. *See, e.g., Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). Mars may establish a prima facie case of FMLA retaliation "by showing that (1) she availed herself of a protected right under the FMLA by notifying [Dana] of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Id.* at 508.

As Dana argues, Mars cannot establish a prima facie case because, even viewing the evidence in the light most favorable to Mars, no reasonable jury could conclude that she notified Dana of her intent to take leave. Mars claimed she informed a co-worker she was going to use FMLA leave and that she previously had done so without issue when using FMLA leave. (Doc. No. 15-1 at 108-09). But she did not deny that Dana's policy required her to complete certain paperwork before utilizing her intermittent FMLA leave or point to any prior instance in which she left work using intermittent FMLA leave and without completing the paperwork. (*Id.*).

Dana has established there is not a genuine dispute of material fact as to whether Mars was terminated for a legitimate, non-discriminatory reason and, therefore, I conclude Dana is entitled to summary judgment on Mars' FMLA retaliation claim. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) ("The central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'") (quoting *Edgar,* 443 F.3d at 508).

D.   WRONGFUL TERMINATION

Finally, Dana argues it is entitled to summary judgment on Mars' wrongful termination claim because Ohio law prohibits union members like Mars from bringing claims for wrongful termination

in violation of Ohio public policy. In *Haynes v. Zoological Society of Cincinnati*, the Supreme Court of Ohio expressly held that union members are prohibited from pursuing public-policy termination claims. 652 N.E.2d 948, 950-51 (Ohio 1995). I agree that this claim is prohibited by Ohio law and grant Dana's motion for summary judgment on this basis.

## V. CONCLUSION

For the reasons stated above, I grant Dana's motion for summary judgment as to each of Mars' claims. (Doc. No. 14).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge